UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

In the Matter of the Application of
IPC DO NORDESTE, LTDA,                    Case Number 12-50624
For an Order Seeking Discovery            Honorable Thomas L. Ludington
Under 28 U.S.C. § 1782

_____ /

**OPINION AND ORDER GRANTING MOTION TO QUASH SUBPOENAS**

This case concerns the discretionary authority of federal district courts to assist in the production of evidence for use in a foreign tribunal. 28 U.S.C. § 1782. In Brazilian court, IPC Do Nordeste, LTDA, has brought suit against Dow Brasil Nordeste Industria, LTDA, a Brazilian subsidiary of Dow Chemical Company. In this ancillary litigation, IPC seeks to discover information from Dow Chemical for use in the Brazilian litigation. Dow Chemical now moves to quash the subpoenas.

For reasons detailed below, the motion will be granted. Briefly, based on the factors enumerated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the Court concludes that the subpoenas should be quashed.

IPC does not dispute that all of the evidence it seeks "would obviously be in the possession of *Dow Brasil*." Dow Chemical's Br. Supp. Mot. to Quash 10 ("Dow Chemical's Br."), ECF No. 8; *compare id.* (contending that information sought is in Dow Brasil's possession), *with* IPC's Resp. Br. 4–6 (not contesting Dow Chemical's assertion). Thus, the evidence sought is obtainable absent § 1782(a) aid.

Likewise, the Supreme Court explains that one of the policy aims of § 1782 is "providing efficient assistance to participants in international litigation." *Intel Corp.*, 542 U.S. at 252.  One Brazilian corporation (IPC) travelling to the United States to seek information regarding a second Brazilian corporation (Dow Brasil) from a third party (Dow Chemical) for use in a case pending in Brazilian court is not an efficient manner of gathering information in the possession of the second Brazilian corporation (Dow Brasil).  Rather, it is an unduly burdensome manner of obtaining the information.  The evidence sought can be obtained from a more convenient and less burdensome source — Dow Brasil.  The motion to quash the subpoenas will be granted.

# I

## A

In 1997, IPC and Dow Brasil entered into a supply contract.  *See* IPC's Br. Supp. § 1782 Appl. 1 ("IPC's Br."), ECF No. 1.  Dow Brasil agreed to supply gaseous chloride acid exclusively to IPC.  *Id*.  IPC, in turn, agreed to purchase chloride acid exclusively from Dow Brasil.  *Id*.

IPC built its facility near Dow Brasil's plant in the State of Bahia, Brazil.  *Id*.  For about the next decade, the parties performed their obligations.  *See id*. 1–2.

In 2006, the contract was amended.  IPC's Br. 2.  As amended, it had a five year term, with an option for a five year extension.  *Id*.  The contract would terminate on November 30, 2011, if Dow Brasil provided IPC notice of the termination one year in advance (i.e., no later than November 30, 2010).  *Id*.  Otherwise, the contract would automatically extend for another five years (i.e., until November 30, 2016).  *Id*.

On November 30, 2010, Dow Brasil emailed a notice of termination to IPC.  *Id*.  It also sent a termination letter.  IPC's Br. 2.  On December 2, 2010, IPC received the termination letter.

*Id*. Contending that the email was ineffective as notice (and the letter was late), IPC asserted that Dow Brasil did not timely terminate the contract. *Id*. Disagreeing, Dow Brasil shut down its Bahia production facility. *Id*.

## B

IPC brought suit in Brazilian court against Dow Brasil in November 2011. *Id*. Seeking a preliminary injunction, IPC sought to enjoin Dow Brasil from stopping production of chloride acid. IPC's Br. 2. In December 2011, the court issued an order directing Dow Brasil to reopen its plant and resume supplying IPC. *Id*. Dow appealed that decision; the intermediate Brazilian appellate court has affirmed. Dow Chemical's Br. 3.

"During the proceedings," IPC asserts, it "learned that Dow Brasil apparently also breached the [contract] by selling [chloric acid] to third-parties." IPC's Br. 3.

In January 2012, IPC filed a second suit in Brazilian court against Dow Brasil. *Id*. Alleging breach of contract, IPC requested: "a declaration that the termination notice sent by Dow Brasil was invalid and did not comply with the contractual provisions"; "money damages for the aforementioned breach"; "money damages for the breach of the exclusivity provision of the [contract]"; and "compensation for capital investments made in connection with the [contract]." *Id*. at 4.

Dow Brasil was served with the papers in the breach of contract action in May 2012. Dow Chemical's Br. 3.

## C

Shortly before Dow Brasil was served with the papers in the breach of contract action, IPC filed an ex parte application for discovery in this Court pursuant to 28 U.S.C. § 1782. ECF

No. 1.   Requesting that the Court authorize two subpoenas of Dow Chemical, IPC seeks documents and depositions. The requested documents are grouped into sixteen categories:

1. All documents concerning the closure of the [Dow Brasil] Plant.

2. All documents concerning the reasons for closing the [Dow Brasil] Plant.

3. All documents containing any analysis of reasons for closing the [Dow Brasil] Plant.

4. All documents reflecting the names and titles of the individuals involved in the decision to close the [Dow Brasil] Plant.

5. All documents concerning [Dow Brasil's] Supply Agreement with IPC.

6. All documents concerning [Dow Brasil's] decision to terminate the Supply Agreement.

7. All documents reflecting the names and titles of the individuals involved in [Dow Brasil's] decision to close the Plant.

8. All documents reflecting the names and titles of the individuals involved in the performance, actions, and omissions related to [Dow Brasil's] Supply Agreement.

9. All documents concerning the sale of [chloride acid] to third-parties by Dow Brasil.

10. All documents concerning procedures for handling [chloride acid] at the [Dow Brasil] Plant.

11. All documents concerning [Dow Brasil's] sale of [chloride acid] to IPC.

12. All documents concerning any licenses or permits obtained by Dow Brasil to handle [chloride acid].

13. All documents concerning any licenses or permits obtained by Dow Brasil to handle other toxic substances.

14. All documents reflecting those who were authorized to handle [chloride acid] at the [Dow Brasil] Plant.

15. All documents concerning any analysis or investigation regarding the handling of [chloride acid] at the [Dow Brasil] Plant.

    16.    All documents concerning the decision not to reopen the [Dow Brasil] Plant as ordered by the court in Brazil.

IPC § 1782 Appl Ex. A, at 7–8. The requested deposition subpoenas are: (1) Dow Brasil's contract with IPC; (2) Dow Brasil's closing of the plant in Bahia, Brazil; and (3) Dow Brasil's sale of chloride acid to third parties. *Id.* at 12.

The Court granted IPC's application in May 2012. ECF No. 2. Dow Chemical now moves to quash the subpoenas issued pursuant to that application.

## II

### A

Section 1782, the Supreme Court observes, traces its origins to the 1850s. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). "The year 1854 may be taken as the beginning," one commentator reports, explaining: "In that year, the French government, on behalf of a French court, sent to the Department of State a request for the examination of a witness in New York State. Chagrined, the Secretary of State told the French Ambassador that the Attorney General had advised him that there was no statute which authorized a federal court to compel the attendance of a witness for the execution of a letter rogatory[1] from a French court." Harry Jones, *International Judicial Assistance: Procedural Chaos and a Program for Reform*, 62 Yale L.J. 515, 540 (1953), *cited in Intel Corp.*, 542 U.S. at 248.

Addressing this lack of statutory authority, the Court observes, "Congress first provided for federal-court aid to foreign tribunals in 1855," explaining that "requests for aid took the form of letters rogatory forwarded through diplomatic channels." *Intel Corp.*, 542 U.S. at 247 (citing Act of Mar. 2, 1855, ch. 140, § 2, 10 Stat. 630).

---

[1] A "letter rogatory," the Supreme notes, "is the request by a domestic court to a foreign court to take evidence from a certain witness." *Intel Corp.*, 542 U.S. at 247 n.1 (quoting Harry Jones, *International Judicial Assistance: Procedural Chaos and a Program for Reform*, 62 Yale L.J. 515, 519 (1953)).

In 1948, "Congress substantially broadened the scope of assistance federal courts could provide for foreign proceedings. That legislation, codified as § 1782, eliminated the prior requirement that the government of a foreign country be a party or have an interest in the proceeding." *Intel Corp.*, 542 U.S. at 247–48 (citing Act of June 25, 1948, ch. 646, § 1782, 62 Stat. 949). That is, federal court aid to parties seeking evidence for use in foreign forums was no longer limited to letters rogatory.

In the following years, Congress continued to expand the scope of discovery available for use in foreign forums. *See generally* E. Morgan Boeing, Note, *Majority and Dissent in Intel: Approaches to Limiting International Judicial Assistance*, 29 Hastings Int'l & Comp. L. Rev. 381, 382–85 (2006) (discussing statutory history). In 1949, for example, "Congress deleted 'civil action' from § 1782's text and inserted 'judicial proceeding.'" *Intel Corp.*, 542 U.S. at 248 (citing Act of May 24, 1949, ch. 139, § 93, 63 Stat. 103). In 1964, Congress enacted "a complete revision of § 1782. As recast in 1964, § 1782 provided for assistance in obtaining documentary and other tangible evidence as well as testimony." *Intel Corp.*, 542 U.S. at 248 (citations omitted) (citing Act of Oct. 3, Pub. L. 88–619, § 9, 78 Stat. 997; Hans Smit, *International Litigation under the United States Code*, 65 Colum. L. Rev. 1015, 1026–35 (1965)).

Today, § 1782 provides that a federal district court "may order" a person who resides in the district to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." § 1782(a). Specifically, the section provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and

> the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

§ 1782(a); *see generally* James L. Buchwalter, Annotation, *Construction and Application of 28 U.S.C.A. § 1782, Permitting Federal District Court to Order Discovery for Use in Proceeding in Foreign or International Tribunal*, 56 A.L.R. Fed. 2d 307 (2011) (discussing modern application of § 1782).

The district court is authorized to grant the request if the four statutory requirements are established:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (footnote omitted) (quoting 28 U.S.C. § 1782(a)).

If these requirements are met, § 1782 then "authorizes, but does not require, a federal district court to provide assistance." *Intel*, 542 U.S. at 255; *see generally* Buchwalter, *supra*, § 2 (noting that a § 1782 application "presents two inquiries, first, whether the district court is authorized to grant the request; and second, if so, whether the district court should exercise its discretion to do so").

In evaluating the whether to provide the assistance requested, the court should keep in mind the "twin aims" of § 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel Corp.*, 542 U.S. at 252 (quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002), *aff'd* 542 U.S. 241 (2004)).

In this case, Dow Chemical acknowledges that IPC's application "satisfies the statutory requirements of § 1782." Dow Chemical's Br. 5. The motion to quash is based on the statute's "may" — Dow Chemical writes "that under the circumstances here, the Court should exercise its discretion to quash the document and deposition subpoenas issued by IPC." *Id*. at 6.

**B**

The district court "may order" a person to give testimony or produce documents for use in a foreign forum, § 1782(a) provides. "May," of course, is not "must" — "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp.*, 542 U.S. at 264 (citing *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001)). Rather, "Whether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court." *United Kingdom*, 238 F.3d at 1318–19.

In exercising this discretion, the Supreme Court instructs, a district court should consider four non-exclusive factors. *Intel Corp.*, 542 U.S. at 264–65.

**1**

First, the district court should consider whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Id*. at 264. As a general matter, the Court explains, "when the person from whom discovery is sought is a participant in the foreign proceeding. . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id*.

Elaborating, the Court instructs that this factor is relevant because of the limits of the foreign tribunal's power to order production of evidence: "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . . In contrast,

nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*.

In this case, Dow Chemical is not a party to the Brazilian litigation. Yet this factor nevertheless supports Dow Chemical's motion to quash. As noted, the Supreme Court explains that the purpose of this factor — indeed, one of the purposes of § 1782 — is facilitating the production of evidence.

Here, IPC does not dispute Dow Chemical's assertion that all of the evidence IPC seeks "would obviously be in the possession of *Dow Brasil*." Dow Chemical's Br. 10; *compare id.* (contending that information sought is in Dow Brasil's possession), *with* IPC's Resp. Br. 4–6 (not contesting Dow Chemical's assertion). Moreover, an independent review of the categories of information sought in the subpoenas suggests that this information would be in the possession of Dow Brasil. The information sought in the document subpoenas, for example, includes: (1) "All documents concerning the reasons for closing the [Dow Brasil] Plant"; (2) "All documents concerning [Dow Brasil's] Supply Agreement with IPC"; (3) "All documents concerning [Dow Brasil's] sale of [chloride acid] to IPC"; and (4) "All documents concerning the sale of [chloride acid] to third-parties by Dow Brasil." IPC § 1782 Appl Ex. A, at 7–8. The information sought in the deposition subpoenas are grouped in to three categories of information: (1) Dow Brasil's contract with IPC; (2) Dow Brasil's closing of the plant in Bahia, Brazil; and (3) Dow Brasil's sale of chloride acid to third parties. *Id*. at 12. Nothing suggests that this information would be in the possession of Dow Chemical but not Dow Brasil.

In sum, as it is uncontested that the Brazilian court has the power to order the production of the evidence sought by IPC, the first *Intel* factor weighs in favor of Dow Chemical and against IPC.

**2**

The second *Intel* factor is international comity. 542 U.S. at 261. Specifically, a district court must consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Id*. at 264.

In this case, there is no evidence that a Brazilian court would be receptive to the material discovered here under § 1782. *See generally Brazilian Inv. Advisory Servs., LTDA v. United Merchs. & Mfg., Inc*., 667 F. Supp. 136, 138–39 (1987) (discussing Brazilian legal system); Henry Saint Dahl, *Forum Non Conveniens, Latin America & Blocking Statutes*, 35 U. Miami Inter-Am. L. Rev. 21, 38–40 (2003) (same); Débora Gozzo, *The New Brazilian Civil Code*, 32 Int'l J. Legal Info. 617, *passim* (2004) (discussing history of Brazilian civil law and new Civil Code that took effect in 2003). As one commentator observes:

> [Section] 1782 allows the American court to cooperate with its foreign counterpart seeking evidence in the US. . . . Some US courts mistakenly believe that such international rules allow Latin American courts a free rein to obtain documents or depose witnesses in the US. This is a naïve assumption . . . . In practice, the witnesses would most likely be protected by Latin American rules about privilege and the documents would not be discoverable according to Latin American law. The Latin American court, of course, would not be able to request US judicial assistance in a way that breaches that requesting State's standards, even if such evidence were unrestricted in the US.

Dahl, *supra*, at 39–40 (footnote omitted); *see also Panama Processes, S.A. v. Cities Serv. Co.*, 500 F. Supp. 787, 800 (S.D.N.Y. 1980) ("A Brazilian civil trial is 'inquisitorial' rather than 'adversarial,' with the judge acting as fact-finder, and the presentation of proof relying heavily

upon documents, although witnesses appear in court for examination by the judge. It also appears that pre-trial discovery of an opponent's documents or employees, or of third-party witnesses, is not provided for by the Brazilian Procedural Civil Code.").

Yet there is also no conclusive evidence that a Brazilian court "would be unreceptive to materials discovered here." *In re Labor Ct. of Braz.*, 466 F. Supp. 2d 1020, 1032 (N.D. Ill. 2006), *cited in* IPC's Resp. Br. 5–6; *see also* Dow Chemical's Br. 10 n.3 ("Dow Chemical does not know at this time whether the Brazilian court would be receptive to evidence obtained in a proceeding in the United States to which Dow Brasil is not a party.").

Given this uncertainty, this factor supports neither party.

### 3

The third *Intel* factor is "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." 542 U.S. at 265.

The Seventh Circuit explains: "it may seem odd that Congress would have wanted foreign litigants to be able to take advantage of our generous discovery provisions. The stated reason was by setting an example to encourage foreign countries to enlarge discovery rights in their own legal systems. That might benefit U.S. litigants in those countries. And since the foreign court could always exclude the fruits of U.S. discovery, it seemed that allowing such discovery could only help, and not hurt, the foreign tribunal." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (Posner, J.) (citations omitted) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir.1995); *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 99–100 (2d Cir.1992); S. Rep. No. 1580, 88th Cong., 2d Sess. 2, 1964 U.S.C.C.A.N. 3782, 3783–84 (1964); Hans Smit, *Recent Developments in International*

*Litigation*, 35 S. Tex. L. Rev. 215, 235 (1994)); *see Intel Corp.*, 542 U.S. at 252 (noting that the "twin aims" of § 1782 are "efficient assistance" to foreign courts and "encouraging foreign countries by example to provide similar assistance to our courts").

This factor again weighs in IPC's favor on casual inspection, but not careful examination. At first glance, the factor supports IPC's application because, although neither party expressly defines what the Brazilian court's proof-gathering restrictions are, there is no conclusive evidence that IPC's application is an attempt to circumvent these restrictions. *See In re Labor Ct. of Braz.*, 466 F.Supp.2d at 1032 (quoted above); *but see Panama Processes*, 500 F. Supp. at 800 (quoted above); Dahl, *supra*, at 39–40 (quoted above).

This factor, however, also supports Dow Chemical's motion to quash, regardless of what the Brazilian proof-gathering restrictions or other policies are. As noted, the Supreme Court explains that one of the policy "aims" of § 1782 is efficiency. *Intel Corp.*, 542 U.S. at 252. As noted, IPC does not dispute Dow Chemical's assertion that all of the evidence IPC seeks "would obviously be in the possession of *Dow Brasil*." Dow Chemical's Br. 10; *compare id.*, *with* IPC's Resp. Br. 4–6. And as noted, one Brazilian corporation (IPC) travelling to the United States to seek information regarding a second Brazilian corporation (Dow Brasil) from a third party (Dow Chemical) for use in a case pending in Brazilian court is not an efficient manner of gathering information in the possession of the second Brazilian corporation (Dow Brasil).

Because rational actors do not needlessly increase their own litigation costs, there must be a reason that IPC is seeking the information here rather than in Brazil. One reasonable explanation is that IPC is attempting to circumvent proof-gathering restrictions of the Brazilian court. *See Panama Processes*, 500 F. Supp. at 800; Dahl, *supra*, at 39–40. If so, the third *Intel* factor weighs against IPC. If not, this factor nevertheless weighs against IPC because its conduct

contravenes an express policy of the United States: "providing efficient assistance to participants in international litigation." *Intel Corp.*, 542 U.S. at 252.

**4**

The fourth *Intel* factor is whether the discovery request is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. The factor is based on the incorporation by reference in § 1782 of the Federal Rules of Civil Procedure. 28 U.S.C. § 1782(a) (providing that discovery must be "in accordance with the Federal Rules of Civil Procedure," provided "that the order does not prescribe otherwise"); *In re Metallgesellschaf AG*, 121 F.3d 77, 80 (2d Cir. 1997); *In re Sveaas*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008) ("The proper scope of the discovery sought under section 1782, like all federal discovery, is governed by Federal Rule 26(b).").

Discovery under the federal rules is broad — but not unlimited. Fed. R. Civ. P. 26(b). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," Rule 26 provides. Fed. R. Civ. P. 26(b)(1). But, the rule further cautions, a court may limit discovery "if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

To illustrate, federal courts of appeals agree that "if it were clear that discovery were equally available in both foreign and domestic jurisdictions, a district court might rely on this evidence to conclude that the § 1782 application was duplicative." *Metallgesellschaf*, 121 F.3d at 79 (dicta) (citing Fed. R. Civ. P. 26(b)(2)); *accord Heraeus Kulzer*, 633 F.3d at 594.

Yet the federal courts of appeals also agree that § 1782 does not impose an "exhaustion requirement" — a party is not obligated "to seek discovery of the documents in the foreign forum before asking for the assistance of a district court." *Ghana v. ProEnergy Servs.*, 677 F.3d

340, 345 (8th Cir. 2012) (citing *Metallgesellschaft*, 121 F.3d at 79); *accord In re Bayer AG*, 146 F. 3d 188, 195–96 (3d Cir. 1998); *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992).

Rather, "the discoverability of requested material under foreign law is simply one factor that a district judge may consider in the exercise his or her discretion." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) (citing *In re Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993)); *accord Heraeus Kulzer*, 633 F.3d at 594. To summarize, a § 1782 applicant is not required to seek the information in a foreign forum before seeking to subpoena it in a federal district court.

Nevertheless, "district courts must be alert for potential abuses that would warrant a denial of an application to be allowed to take such discovery. One abuse would be for a party to seek discovery in a federal district court that it could obtain in the foreign jurisdiction, thus gratuitously forcing his opponent to proceed in two separate court systems."[2] *Heraeus Kulzer*, 633 F.3d at 594 (citing *Intel Corp.*, 542 U.S. at 264); *see generally* Marat Massen, Note, *Discovery for Foreign Proceedings After Intel v. Advanced Micro Devices: A Critical Analysis of 28 U.S.C. § 1782 Jurisprudence*, 83 S. Cal. L. Rev. 875, 923–31 (2010) (noting a "quasi-exhaustion requirement" would permit "§ 1782 discovery orders to be more cost-effective by reducing the incentive for the § 1782 requestor to seek overbroad discovery and removing the need for foreign tribunals to hold subsequent admissibility proceedings").

Put differently, the § 1782 applicant's conduct in the foreign forum is not irrelevant. That is, "While there is no 'exhaustion' requirement for seeking discovery under § 1782, the district court may, in its discretion, properly consider a party's failure first to attempt discovery

---

[2] Dow Brasil, not Dow Chemical, is IPC's opponent in the Brazilian court. IPC, however, treats the separate corporate existence as a distinction without a difference, directing questions to Dow Chemical that it acknowledges Dow Brasil has in its possession.

measures in a foreign jurisdiction." *In re Babcock Borsig Ag*, 583 F. Supp. 2d 233, 241 (D. Mass. 2008); *accord In re Digitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *4 (W.D. Wash. May 8, 2007) ("Digitechnic has not even tried to obtain any of the discovery sought here by way of French discovery tools.  On this point, Digitechnic emphasizes that there is no 'exhaustion' requirement in § 1782.  While this is correct, there is nevertheless no reason that this Court should overlook Digitechnic's failure to attempt any discovery measures in France in making the discretionary decision now before it."  (emphasis omitted)).

As noted, IPC does not dispute Dow Chemical's assertion that all of the evidence IPC seeks "would obviously be in the possession of *Dow Brasil*."  Dow Chemical's Br. 10; *compare id.*, *with* IPC's Resp. Br. 4–6.  Likewise, as detailed above, an independent review of the categories of information sought in the subpoenas suggests that this information would be in the possession of Dow Brasil.

Thus, it is not altogether clear why IPC has brought a § 1782 application.  It may be seeking the same evidence from Dow Chemical in this Court and Dow Brasil in the Brazilian court, in which case the discovery sought here is unreasonably cumulative or duplicative.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i); *but see* IPC's Resp. Br.  6 (implicitly acknowledging that it has not attempted to obtain any evidence in the pending contract litigation in Brazil).  Or it may be seeking this evidence from Dow Chemical, but not Dow Brasil, for use in the Brazilian litigation. In that case, either the evidence can be obtained from more convenient and less burdensome source, Dow Brasil, or the evidence cannot be obtained from Dow Brasil because of Brazilian proof-gathering restrictions and policies.  *See id*.  In any case, the final *Intel* factor weighs in favor of Dow Chemical and against IPC.

**C**

Dow Chemical's motion to quash the subpoenas will be granted. Moreover, because IPC does not dispute Dow Chemical's assertion that all of the evidence IPC seeks "would obviously be in the possession of *Dow Brasil*," the subpoenas will be quashed in their entirety.

Against this conclusion, IPC writes "that the discovery requests are narrowly tailored and proper. However, even if this Court were to accept Dow's argument that the requests are too broad vis-à-vis 'the dispositive issues in the Brazilian litigation,' which they are not, the proper course would be to limit some of the requests, rather than quashing the subpoenas in their entirety." IPC's Resp. Br. 10.

For the reasons detailed above, IPC's argument is unpersuasive. It is undisputed that the information sought is in Dow Brasil's possession. Thus, all of the evidence sought is available from a more convenient and less burdensome source, Dow Brasil.

If IPC is able to identify some information relevant to the Brazilian litigation that is in the possession of Dow Chemical but not Dow Brasil, IPC may refile its § 1782 application.

**III**

Accordingly, it is **ORDERED** that Dow Chemical's motion to quash (ECF No. 8) is **GRANTED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: September 25, 2012

-17-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 25, 2012.

        s/Tracy A. Jacobs
        TRACY A. JACOBS